Dockets.Justia.com

1
2
3
4
5
6
7
8
9

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

10

11  | ROB RINDE f/k/a ROBERT LARRY LEROY
12  | PITSOR, JR.

NO.  2:06-CV-00556TSZ

Plaintiff,

DECLARATION OF TIMOTHY D.
KOSNOFF RE: REPLY TO OPPOSITION
MOTION TO AMEND COMPLAINT TO
CLARIFY STATUS OF DEFENDANTS
AND MOTION TO REMAND

13
14  | vs.
15  | THE CORPORATION OF THE PRESIDENT
OF THE CHURCH OF JESUS CHRIST OF

**NOTED FOR:  FRIDAY, MAY 26, 2006**

16  | LATTER-DAY SAINTS, a Utah corporation
sole, aka the "MORMON CHURCH" THE
17  | CHURCH OF JESUS CHRIST OF LATTER-
DAY SAINTS, an unincorporated association,
18
19  | Defendant.
20

21      TIMOTHY D. KOSNOFF, being first duly sworn on oath, states as follows:

22      1.      I am one of the attorneys for the plaintiff in this matter; I make this declaration

23  based on my own personal knowledge.

24      2.      Shortly before receipt of the defendant's Notice of Appearance/Notice of

25  Removal, I had a telephone conversation with defense counsel, Chuck Gordon.  During that

26

KOSNOFF DECL. RE: REPLY TO OPP. TO MTN TO
AMEND/REMAND - 1 of 3
(2:06-CV-00556TSZ)
[164446 v03.doc]

LAW OFFICES
GORDON, THOMAS, HONEYWELL, MALANCA,
PETERSON & DAHEIM LLP
ONE UNION SQUARE
600 UNIVERSITY, SUITE 2100
SEATTLE, WASHINGTON  98101-4185
(206) 676-7500 ·  FACSIMILE (206) 676-7575

conversation, Mr. Gordon advised me that it was COP's intention to remove this action to this Court.

3.      In response, I advised Mr. Gordon that (a) that the Mormon Church was a defendant and (b) this issue of whether there was diversity of citizenship in an action in which the Mormon Church was a named defendant had already been resolved by a United States District Court Judge (and that the judge had found that the inclusion of the Mormon Church as a defendant indeed destroyed diversity). I specifically requested that in this circumstance COP not file the removal.

4.      Attached hereto as **Exhibit A** is a true and correct copy of the face sheets from the cases cited in Section C of Plaintiff's Reply to Defendant's Opposition to Motion to Amend/Remand.

5.      Attached hereto as **Exhibit B** is a true and correct copy of the Answer in the case of *Scott v. Corporation of the Presiding Bishop of the Church of Jesus Christ of Latter-day Saints,* U.S.D.C., Oregon District, Cause No. 98-366AA.


I DECLARE UNDER PENALTY OF PERJURY THAT THE FOREGOING IS TRUE AND CORRECT.


DATED at Seattle, Washington, this 26th day of May, 2006.


           /s/ Timothy D. Kosnoff
           Timothy D. Kosnoff


KOSNOFF DECL. RE: REPLY TO OPP. TO MTN TO
AMEND/REMAND - 2 of 3
(2:06-CV-00556TSZ)
[164446 v3.doc]

LAW OFFICES
GORDON, THOMAS, HONEYWELL, MALANCA,
PETERSON & DAHEIM LLP
ONE UNION SQUARE
600 UNIVERSITY, SUITE 2100
SEATTLE, WASHINGTON 98101-4185
(206) 676-7500 · FACSIMILE (206) 676-7575

1

CERTIFICATE OF ELECTRONIC FILING

2

I hereby certify that on May 26, 2006, I electronically filed the foregoing

3

**DECLARATION OF TIMOTHY D. KOSNOFF RE: REPLY TO OPPOSITION TO**

4

**MOTION TO AMEND COMPLAINT TO CLARIFY STATUS OF DEFENDANTS**

5

**AND MOTION TO REMAND** with the Clerk of the Court using the CM/ECF system which

6

will send notification of such filing to the following:

7

| Charles C. Gordon<br>cgordon@gmtlaw.com<br>Jeffrey I. Tilden<br>jtilden@gmtlaw.com<br>1001 Fourth Avenue, Suite 4000<br>Seattle, WA 98154<br>PH: 206.467.6477<br>FX: 206.467.6292 | |

8

9

10

11

12

13

DATED this 16th day of May, 2006.

14

15

/s/ Bernadette Lovell

16

Legal Assistant to Michelle A. Menely

17

18

19

20

21

22

23

24

25

26

KOSNOFF DECL. RE: REPLY TO OPP. TO MTN TO
AMEND/REMAND - 3 of 3
(2:06-CV-00556TSZ)
[164446 v03.doc]

LAW OFFICES
GORDON, THOMAS, HONEYWELL, MALANCA,
PETERSON & DAHEIM LLP
ONE UNION SQUARE
600 UNIVERSITY, SUITE 2100
SEATTLE, WASHINGTON 98101-4185
(206) 676-7500 · FACSIMILE (206) 676-7575

08/04/98  14:05 FAX 503 224 7324       DUNN CARNEY ONE                    ☒002/012

SCO12-1        LF/JMH/BKB/GER

RECEIVED

AUG 04 1998

DUNN, CARNEY

1 | Stephen F. English, OSB 73084
  | Lori R. Metz, OSB 85286
2 | Karen M. Vickers, OSB 91381
  | BULLIVANT, HOUSER, BAILEY
3 | A Professional Corporation
  | 300 Pioneer Tower
4 | 888 SW Fifth Avenue
  | Portland, OR 97204-2089
5 | Telephone:  (503) 228-6351
  | Facsimile:  (503) 295-0915
6 | E-Mail:  stephen.english@bullivant.com
  | E-Mail:  lori.metz@bullivant.com
7 | E-Mail:  karen.vickers@bullivant.com

8 |      Attorneys for Defendants

9 |

10 |      IN THE UNITED STATES DISTRICT COURT

11 |        FOR THE DISTRICT OF OREGON

12 | JEREMIAH SCOTT,                    )
13 |          Plaintiff,               )
14 |      v.                           )   Civil No. 98-366-AA
15 | CORPORATION OF THE PRESIDING      )   ANSWER OF DEFENDANTS GREGORY
   | BISHOP OF THE CHURCH OF JESUS     )   FOSTER, THE CHURCH OF JESUS
16 | CHRIST OF LATTER DAY SAINTS, a    )   CHRIST OF LATTER-DAY SAINTS,
   | Utah corporation sole;            )   CORPORATION OF THE PRESIDENT
17 | GREGORY LEE FOSTER, an            )   AND CORPORATION OF THE
   | individual; THE CHURCH OF         )   PRESIDING BISHOP OF THE
18 | JESUS CHRIST OF LATTER-DAY        )   CHURCH OF JESUS CHRIST OF
   | SAINTS, a Utah corporation        )   LATTER-DAY SAINTS TO
19 | sole; THE CORPORATION OF THE      )   PLAINTIFF'S THIRD AMENDED
   | PRESIDENT OF THE CHURCH OF        )   COMPLAINT
20 | JESUS CHRIST OF LATTER-DAY        )
   | SAINTS, a Utah corporation        )
21 | sole,                             )
22 |          Defendants.             )

23 |      For their Answer to plaintiff's Third Amended

24 | Complaint, defendants Corporation of the Presiding Bishop of The

25 | Church of Jesus Christ of Latter-day Saints ("CPB"), Corporation

26 | of the President of The Church of Jesus Christ of Latter-day

Page 1 -  **ANSWER TO PLAINTIFF'S THIRD AMENDED COMPLAINT**

BULLIVANT HOUSER BAILEY
A Professional Corporation
888 S.W. Fifth Avenue, Suite 300
Portland, Oregon 97204-2089
Telephone (503) 228-6351

**EXHIBIT A**              2              **EXHIBIT A-4**

1  Saints ("COP"), and The Church of Jesus Christ of Latter-day

2  Saints ("the Church") and Gregory Lee Foster ("Foster") (all four

3  are hereinafter collectively referred to as "Defendants") admit,

4  deny and affirmatively allege as follows:

5                          **FIRST DEFENSE**

6          Defendants respond to the specific allegations of the

7  Third Amended Complaint as follows:

8          1.   Defendants admit that Plaintiff's claim is civil

9  in nature and that Plaintiff alleges that it involves a sum,

10  exclusive of interest and costs, in excess of $75,000, but deny

11  that complete diversity of citizenship exists between the parties

12  to this matter.  Defendants deny the remaining allegations of

13  paragraph 1 of the Third Amended Complaint.

14          2.   Defendants admit that given the allegations of the

15  Complaint, venue appears to be proper in this Court.  Defendants

16  specifically deny that any events or omissions occurred that give

17  rise to any claim.  Defendants deny the remaining allegations of

18  paragraph 2 of the Third Amended Complaint.

19                            **PARTIES**

20          3. . Defendants are without knowledge and information

21  sufficient to form a belief as to the truthfulness of the

22  allegations of paragraph 3 and therefore deny the same.

23          4.   Defendants admit that Defendant CPB is a

24  nonprofit, Utah corporation sole organized and existing under the

25  laws of the State of Utah and with its principal operations in

26  Utah.  Defendants also admit that CPB is registered in the State

Page 2 - **ANSWER TO PLAINTIFF'S THIRD AMENDED COMPLAINT**

BULLIVANT HOUSER BAILEY
A Professional Corporation
888 S.W. Fifth Avenue, Suite 300
Portland, Oregon 97204-2089
Telephone (503) 228-6351

**EXHIBIT A**                    3                    **EXHIBIT A-5**

08/04/98  14:05 FAX 503 224 7324          DUNN CARNEY ONE                    ☒004/012

1  of Oregon.  Defendants deny the remaining allegations of

2  paragraph 4 of the Third Amended Complaint.

3     5.    Defendants admit that Defendant Foster is a

4  resident of Oregon and that he was the Bishop of the Brentwood

5  Ward located in Portland, Oregon.  Defendants deny the remaining

6  allegations of paragraph 5 of the Third Amended Complaint.

7     6.    Defendants deny the allegations of paragraph 6.

8  Defendants affirmatively allege that the Church is an

9  unincorporated association that is not subject to suit.

10    7.    Defendants admit that COP is a nonprofit, Utah

11 corporation sole formed in 1923 with its principal operations in

12 Utah.

13            **RELATIONSHIPS BETWEEN THE DEFENDANTS**

14    8.    Defendants admit the allegations of paragraph 8,

15 except to add that the Church has over 10 million members in over

16 150 countries.

17    9.    Defendants admit that the LDS Church is a

18 hierarchical church.  Defendants also admit that its highest

19 governing councils and quorum are the First Presidency, the

20 Council of the Twelve Apostles, the First and Second Quorums of

21 the Seventy, and the Presiding Bishopric.  Defendants also admit

22 that local congregation are known as wards or branches and groups

23 of wards or branches constitute stakes or districts.  Defendants

24 deny the remaining allegations of paragraph 9 of the Third

25 Amended Complaint.

26 ///

Page  3 -  **ANSWER TO PLAINTIFF'S THIRD AMENDED COMPLAINT**

BULLIVANT HOUSER BAILEY
A Professional Corporation
888 S.W. Fifth Avenue, Suite 300
Portland, Oregon 97204-2089
Telephone (503) 228-6351

EXHIBIT A-6

08/04/98  14:06  FAX 503 224 7324      DUNN CARNEY ONE                    ☒005/012

1    10.   Defendants admit that the Council of the

2    Disposition of Tithes consists of the First Presidency, the

3    Council of Twelve Apostles, and the Presiding Bishopric.

4    Defendants deny the remaining allegations of paragraph 10 of the

5    Third Amended Complaint.

6    11.   Church defendants are without knowledge and

7    information sufficient to form a belief as to the truthfulness of

8    the allegations that the Scotts regularly attended Church

9    meetings and therefore deny the same.  Defendants admit that the

10   Scott family has paid tithing to the Church.  Defendants also

11   admit that the law of tithing requires all to give 10% of their

12   annual increase to the Lord.   Defendants deny the remaining

13   allegations of paragraph 11 of the Third Amended Complaint.

14   12.   Defendants deny the allegations of paragraph 12 of

15   the Third Amended Complaint.

16   13.   Defendants admit that COP and CPB were organized

17   and exist to acquire, hold, and dispose of property on behalf of

18   the Church.  Defendants deny the remaining allegations of

19   paragraph 13 of the Third Amended Complaint.

20   14.   Defendants admit that CPB was organized in 1916 to

21   acquire, hold, and dispose of property for the Church.

22   Defendants also admit that CPB holds title to many ward buildings

23   and related real property.  Defendants deny the remaining

24   allegations of paragraph 14.

25   15.   Defendants deny the allegations of paragraph 15 of

26   the Third Amended Complaint.

Page  4 -  ANSWER TO PLAINTIFF'S THIRD AMENDED COMPLAINT

BULLIVANT HOUSER BAILEY
A Professional Corporation
888 S.W. Fifth Avenue, Suite 300
Portland, Oregon 97204-2089
Telephone (503) 228-6351

EXHIBIT A -7

1       16.  Defendants admit that a publication entitled

2 "Child Abuse, Helps for Ecclesiastical Leaders" was published in

3 1985.  Defendants deny the remaining allegations of paragraph 16

4 of the Third Amended Complaint.

5       17.  Defendants deny the allegations of paragraph 17 of

6 the Third Amended Complaint.

7                   **GENERAL ALLEGATIONS**

8       18.  Defendants admit that the Plaintiff and his

9 parents were members of the Brentwood Ward.  Defendants are

10 without knowledge and information sufficient to form a belief as

11 to the truthfulness of the allegations of paragraph 18 and

12 therefore deny the same.

13       19.  Defendant Foster admits that Sandra Scott was a

14 Sunday School instructor.  Defendant Foster denies that Franklyn

15 Richard Curtis was a Sunday School Teacher or that he had other

16 leadership positions in the Brentwood Ward.  Defendants are

17 without knowledge and information sufficient to form a belief as

18 to the truthfulness of the remaining allegations of paragraph 19

19 and therefore deny the same.

20       20.  Defendant Foster admits that Sandra Scott advised

21 him of her intent to have Curtis live with her family.

22 Defendants are without knowledge and information sufficient to

23 form a belief as to the truthfulness of the remaining allegations

24 of paragraph 20 and therefore deny the same.

25       21.  Defendants deny the allegations of paragraph 21 of

26 the Third Amended Complaint.

Page  5 -  **ANSWER TO PLAINTIFF'S THIRD AMENDED COMPLAINT**

BULLIVANT HOUSER BAILEY
A Professional Corporation
888 S.W. Fifth Avenue, Suite 300
Portland, Oregon 97204-2089
Telephone (503) 228-6351

EXHIBIT A -8

22.  Defendant Foster admits that Curtis lived at the Scott residence for a period of time in 1990.  Defendants are without knowledge and information sufficient to form a belief as to the truthfulness of the remaining allegations of paragraph 22 and therefore deny the same.

23.  Defendants are without knowledge and information sufficient to form a belief as to the truthfulness of the allegations of paragraph 23 and therefore deny the same.

24.  Defendants are without knowledge and information sufficient to form a belief as to the truthfulness of the allegations of paragraph 24 and therefore deny the same.

25.  Defendants are without knowledge and information sufficient to form a belief as to the truthfulness of the allegations of paragraph 25 and therefore deny the same.

26.  Defendants deny the allegations of paragraph 26 of the Third Amended Complaint.

27.  Defendants deny the allegations of paragraph 27 of the Third Amended Complaint.

28.  Defendants deny the allegations of paragraph 28 of the Third Amended Complaint.

29.  Defendants deny the allegations of paragraph 29 of the Third Amended Complaint.

30.  Defendants deny the allegations of paragraph 30 of the Third Amended Complaint.

31.  Defendants deny the allegations of paragraph 31 of the Third Amended Complaint.

Page  6 -  ANSWER TO PLAINTIFF'S THIRD AMENDED COMPLAINT

BULLIVANT HOUSER BAILEY
A Professional Corporation
888 S.W. Fifth Avenue, Suite 300
Portland, Oregon 97204-2089
Telephone (503) 228-6351

EXHIBIT A-9

1          32.   Defendants deny the allegations of paragraph 32 of
2   the Third Amended Complaint.

3          33.   Defendants deny the allegations of paragraph 33 of
4   the Third Amended Complaint.

5          34.   Defendants deny the allegations of paragraph 34 of
6   the Third Amended Complaint.

7          35.   Defendants deny the allegations of paragraph 35 of
8   the Third Amended Complaint.

9          36.   Defendants deny the allegations of paragraph 36 of
10  the Third Amended Complaint.

11         37.   Defendants deny the allegations of paragraph 37 of
12  the Third Amended Complaint.

13         38.   Defendants deny the allegations of paragraph 38 of
14  the Third Amended Complaint.

15         39.   Defendants deny the allegations of paragraph 39 of
16  the Third Amended Complaint.

17         40.   Defendants deny the allegations of paragraph 40 of
18  the Third Amended Complaint.

19         41.   Defendants deny the allegations of paragraph 41 of
20  the Third Amended Complaint.

21         42.   Defendants deny the allegations of paragraph 42 of
22  the Third Amended Complaint.

23         43.   Defendants deny the allegations of paragraph 43 of
24  the Third Amended Complaint.

25         44.   Defendants deny the allegations of paragraph 44 of
26  the Third Amended Complaint.

Page  7 -  ANSWER TO PLAINTIFF'S THIRD AMENDED COMPLAINT

BULLIVANT HOUSER BAILEY
A Professional Corporation
888 S.W. Fifth Avenue, Suite 300
Portland, Oregon 97204-2089
Telephone (503) 228-6351

EXHIBIT A-10

1      45.   Defendants deny the allegations of paragraph 45 of
2  the Third Amended Complaint.

3      46.   Defendants deny the allegations of paragraph 46 of
4  the Third Amended Complaint.

5      47.   Defendants deny the allegations of paragraph 47 of
6  the Third Amended Complaint.

7      48.   Defendants deny the allegations of paragraph 48 of
8  the Third Amended Complaint and deny that Plaintiff is entitled
9  to any relief in this matter.

10     49.   Defendants affirmatively deny each and every
11 allegation that has not been specifically admitted herein.

12              **SECOND AFFIRMATIVE DEFENSE**

13     This Court lacks jurisdiction over this matter and the
14 Church Defendants, and this action violates constitutional
15 protections under Amendments I, IV, V, and XIV of the United
16 States Constitution, and Article I, §2, §3, §8 and §9 of the
17 Oregon Constitution and federal and state common law.

18              **THIRD AFFIRMATIVE DEFENSE**

19     The Complaint fails to state a claim upon which relief
20 can be granted.

21              **FOURTH AFFIRMATIVE DEFENSE**

22     Plaintiff's claims for punitive damages violate the
23 Constitutions of the United States and Oregon and federal and
24 state common law principles.

25 ///

26 ///

Page  8 -   ANSWER TO PLAINTIFF'S THIRD AMENDED COMPLAINT

BULLIVANT HOUSER BAILEY
A Professional Corporation
888 S.W. Fifth Avenue, Suite 300
Portland, Oregon 97204-2089
Telephone (503) 228-6351

EXHIBIT A-11

08/04/98  14:07 FAX 503 224 7324        DUNN CARNEY ONE                    ☑010/012

1          ## FIFTH AFFIRMATIVE DEFENSE

2              Plaintiff's Third Amended Complaint is barred, in whole

3     or in part, by the applicable state of limitations or the

4     equitable doctrines of waiver, estoppel and laches.

5          ## SIXTH AFFIRMATIVE DEFENSE

6              Defendants COP, CPB, and the Church are not proper

7     party defendants in this matter.

8          ## SEVENTH AFFIRMATIVE DEFENSE

9              The injury and damages, if any, sustained by plaintiff

10    were caused solely by the negligence or culpable conduct of

11    entities or individuals other than Defendants.

12         ## EIGHTH AFFIRMATIVE DEFENSE

13             Defendants assert the defense of charitable immunity.

14         ## NINTH AFFIRMATIVE DEFENSE

15             No vicarious liability can be imposed upon any of the

16    Church Defendants for any acts or omissions of any other person

17    in connection with this matter.

18         ## TENTH AFFIRMATIVE DEFENSE

19             Defendants assert the defense of comparative fault in

20    that individual and or entities other than the Defendants may

21    have fault in causing the alleged damage suffered by Plaintiff.

22         ## ELEVENTH AFFIRMATIVE DEFENSE

23             Defendants assert the defense that no duty statutory or

24    common law was owed to Plaintiff or breached in this matter.

25    ///

26    ///

Page  9 -   ANSWER TO PLAINTIFF'S THIRD AMENDED COMPLAINT

SULLIVANT HOUSER BAILEY
A Professional Corporation
888 S.W. Fifth Avenue, Suite 300
Portland, Oregon 67204-2089
Telephone (503) 228-6351

EXHIBIT A- 12

08/04/98  14:07 FAX 503 224 7324        DUNN CARNEY ONE                    ☒011/012

1              TWELFTH AFFIRMATIVE DEFENSE

2              Defendants assert the defense of potential lack of

3    subject matter jurisdiction or diversity jurisdiction over this

4    matter may be lacking.

5              DATED:   August 4, 1998

6                              BULLIVANT, HOUSER, BAILEY
                               A Professional Corporation
7                              Telephone:   (503) 228-6351

8
                               By  *Karen M. Vic____*
9                              Stephen F. English, OSB 73084
                               Lori R. Metz, OSB 85286
10                             Karen M. Vickers, OSB 91381

11                             Attorneys for Defendants

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

Page  10 - ANSWER TO PLAINTIFF'S THIRD AMENDED COMPLAINT

BULLIVANT HOUSER BAILEY
A Professional Corporation
888 S.W. Fifth Avenue, Suite 300
Portland, Oregon 97204-2089
Telephone (503) 228-6351

EXHIBIT A-13

## CERTIFICATE OF SERVICE

I hereby certify that on August 4, 1998, the foregoing ANSWER OF DEFENDANTS GREGORY FOSTER, THE CHURCH OF JESUS CHRIST OF LATTER-DAY SAINTS, CORPORATION OF THE PRESIDENT AND CORPORATION OF THE PRESIDING BISHOP OF THE CHURCH OF JESUS CHRIST OF LATTER-DAY SAINTS TO PLAINTIFF'S THIRD AMENDED COMPLAINT was served on the parties by delivering to their offices, by the method indicated, copies thereof addressed as follows:

Gary E. Rhoades                                         **HAND DELIVERY**
Dunn Carney Allen Higgins & Tongue
851 SW Sixth Avenue, Suite 1500
Portland, OR  97204

    Attorneys for Plaintiffs

Joel T. Salmi                                           **MAIL**
800 Bellevue Way NE, Ste. 300
Bellevue, WA 98004

    Attorneys for Plaintiffs


_Karen M. Vu_
Karen M. Vickers

Attorneys for Defendants


1 -  CERTIFICATE OF SERVICE

EXHIBIT A-14

**1522**                    741 FEDERAL SUPPLEMENT

ORDERED that the defendant's motion to dismiss be, and the same hereby is, DENIED.



**CHURCH OF JESUS CHRIST OF LATTER-DAY SAINTS, Douglas Bennett, Finley Eversole, Frieda Eversole & Barry Seidel**

v.

**JEFFERSON COUNTY, John Katopodis, Chris McNair, David Orange, Reuben Davis & Jim Gunter.**

No. CV89–PT–0711–S.

United States District Court, N.D. Alabama, S.D.

Feb. 7, 1990.

Church which unsuccessfully applied for rezoning to allow development of land for place of worship filed action against county alleging violation of its First and Fourteenth Amendment rights. The District Court, Propst, J., held that First and Fourteenth Amendment rights of church were violated by county's procedure for obtaining rezoning to allow development of land for churches, subject to neighborhood approval, which imposed undue burden on church and was not least restrictive means of achieving governmental purpose.

So ordered.

See also 721 F.Supp. 1212.

**Constitutional Law** ⬅84.5(18), 278.2(1)
**Zoning and Planning** ⬅76

Zoning ordinance requiring church to apply for rezoning to allow development of land for place of worship, subject to neighborhood approval, violated the First and Fourteenth Amendment rights of church; rezoning application process was unduly burdensome and not the least restrictive means of accomplishing the governmental purpose, which could be achieved by establishing zoning areas available to all churches or, at least, having objective standards for making the rezoning determination. U.S.C.A. Const.Amends. 5, 14; Ala. Code 1975, § 22–27–40 et seq.

Donald H. Brockway, Jr., Douglas P. Corretti, Mary D. Hawkins, James R. Scalco, Corretti & Newsom, Birmingham, Ala., for plaintiffs.

Charles S. Wagner, Jeffrey Monroe Sewell, Asst. County Attys., Birmingham, Ala., for defendants.

PROPST, District Judge.

**FINDINGS OF FACT AND CONCLUSIONS OF LAW**

*Findings of Fact*

This cause came on to be heard at a bench trial. After considering the facts suggested by the parties, objections thereto, and the court's own copious notes, the court finds the following facts:

Plaintiff The Church of Jesus Christ of Latter-Day Saints ("LDS") entered into a contract to purchase from plaintiffs Finley Eversole and Freida S. Eversole ("the Eversoles") a parcel of real estate containing approximately eleven acres located at the northwest corner of Altadena Road and Cahaba River Road (Old U.S. Highway 280 —Florida Short Route) in an unincorporated area of Jefferson County, Alabama. Said tract of land adjoins a single family residential subdivision, and is relatively near U.S. Highway 280 (a four lane highway), and Interstate Highway I-459 and is approximately one-fourth mile from the Alabama State Offices of South Central Bell (Colonnade)[1] and the Colonnade commercial, office and retail development and,

---

1. When the County Commission rezoned the South Central Bell tract, across the Cahaba River Road from the "Eversole tract," it required a strip of residential zoning along Cahaba River Road and permitted no access from the South Central Bell property to Cahaba River Road.

EXHIBIT B-15

**1212**    **721 FEDERAL SUPPLEMENT**

at the time the federal tax liens were filed. Although the mortgage when originally filed may have been deemed perfected under state law, such a conclusion is not binding upon the United States when asserting priority of its tax liens. *See generally* Annotation, *Federal Tax Lien-Competing Liens*, 94 A.L.R.2d 748, 760 (1964). The court finds there is no genuine issue of material fact concerning the priority of the federal tax liens. Accordingly,

IT IS HEREBY ORDERED that the Government's motion for summary judgment declaring its federal tax liens superior to the defendant's mortgage be, and the same hereby is, GRANTED.



The CHURCH OF JESUS CHRIST OF
LATTER-DAY SAINTS, et
al., Plaintiffs,

v.

JEFFERSON COUNTY, ALABAMA, et
al., Defendants.

Civ. A. No. 89-AR-0711-S.

United States District Court,
N.D. Alabama, S.D.

Sept. 23, 1989.

Vendors of property and purchaser, a church, brought action challenging denial of zoning change to all construction of worship facility on the property. The District Court, Acker, J., held that: (1) no claim for denial of substantive due process could be asserted against persons making zoning decision; (2) there was no taking without just compensation; (3) there was no showing of equal protection; but (4) genuine issue of material fact existed as to whether there had been a violation of church's First Amendment rights.

Ordered accordingly.

**1. Zoning and Planning ⟸351, 610**

Elected officials who vote on zoning request can act for purely political reasons as partisan, political decision making, even by unknowledgeable, closed-minded politicians fearful of harm more than political is automatically deemed rational and thus cannot be arbitrary and capricious unless it is the product of corruption, i.e., the result of an outright bribe, as contrasted to some "legitimate" promise to deliver votes or some "legitimate" threat to withhold votes or to harass the politician "legitimately."

**2. States ⟸4.2**

Fourteenth Amendment siphoned and made applicable to the states the Fifth Amendment prohibition against the taking of private property by a governmental entity without the payment of just compensation and unless due process is afforded. U.S.C.A. Const.Amends. 5, 14.

**3. Eminent Domain ⟸2(1.2)**

There is no taking of property as a result of zoning decision where the property, as zoned, has substantial value and can be exploited economically. U.S.C.A. Const. Amend. 14.

**4. Eminent Domain ⟸277**

Property owners who had not pursued state claim of inverse condemnation had not exhausted their remedy before bring § 1983 action claiming an unconstitutional taking without compensation. 42 U.S.C.A. § 1983; U.S.C.A. Const.Amend. 5.

**5. Constitutional Law ⟸228.2**
   **Zoning and Planning ⟸167**

There was no denial of equal protection to those seeking change of zoning to permit construction of worship center in residential area where all applicants for rezoning of property for future construction and operation of a worship center on residential property are turned down. U.S.C.A. Const.Amend. 14.

**6. Constitutional Law ⟸274(3)**

Fourteenth Amendment incorporates the First Amendment and guarantees the right to exercise religion freely. U.S.C.A. Const.Amends. 1, 14.

EXHIBIT B-16

| Citation | Found Document | Rank 1 of 1 | Database |
|---|---|---|---|
| 882 P.2d 1106 | | | OK-CS |
| **(Cite as: 882 P.2d 1106)** | | | |

Harold Ralph STOTTS, Esther Elizabeth Stotts, individually and as parents and
next friend[s] of Matthew John Stotts, a minor, Plaintiffs,

v.

CHURCH OF JESUS CHRIST OF LATTER DAY SAINTS and Gregory Louis Turner,
Appellants and Third-Party Plaintiffs,

v.

LINDSEY CONSTRUCTION CO., INC., and Advanced Warnings, Inc., Appellees.
No. 83931.
Released for Publication by Order of the Court
of Appeals of Oklahoma, Division No. 1.

Court of Appeals of Oklahoma,
Division No. 1.
Sept. 13, 1994.

In personal injury action arising from automobile accident, defendants filed combined answer and third-party petition in which they denied they were negligent and also impleaded construction company and sign company, alleging that they had been negligent in manner that they warned motorists about ongoing construction work on street where accident occurred. The District Court, Muskogee County, William H. Bliss, J., granted third-party defendants' motions to dismiss third-party complaint. Defendants appealed. The Court of Appeals, Jones, J., held that: (1) fact that defendants denied all liability for negligence alleged by plaintiff did not preclude defendants' third-party claim for contribution, and (2) construction company waived any argument it may have had that third-party petition failed to state cognizable claim for contribution.

Reversed and remanded.

Stotts v. Church of Jesus Christ of Latter Day Saints
[1]
96     CONTRIBUTION
96k9    Actions
96k9(.5)  k. In general.
Okl.App.,1994.
Third-party plaintiff need not state present claim for relief against third- party defendant; rather, applicable statute requires only that third-party defendant "is or may be liable" to third-party plaintiff "for all or part of" liability that plaintiff in main action seeks to establish. 12 Okl.St.Ann. § 2014, subd. A.

Stotts v. Church of Jesus Christ of Latter Day Saints
[1]
96     CONTRIBUTION
96k9    Actions
96k9(3)  k. Time for bringing action.
Okl.App.,1994.
Third-party plaintiff need not state present claim for relief against third- party defendant; rather, applicable statute requires only that third-party defendant "is or may be liable" to third-party plaintiff "for all or part of" liability that plaintiff in main action seeks to establish. 12 Okl.St.Ann. § 2014, subd. A.

Stotts v. Church of Jesus Christ of Latter Day Saints
[2]
287    PARTIES
287IV   New Parties and Change of Parties
287k49   Bringing in New Parties

Copr. © West 1998 No Claim to Orig. U.S. Govt. Works

EXHIBIT B-17

more broadly than the Federal Constitution to permit the exercise of expressional rights on private property"); *Planned Parenthood League of Mass., Inc. v. Operation Rescue* (1990), 406 Mass. 701, 550 N.E.2d 1361 (preliminary injunction enjoining Operation Rescue members from engaging in trespass and other illegal activities was not overbroad and did not prohibit exercise of First Amendment rights); *People v. Yutt* (1992), 231 Ill.App.3d 718, 173 Ill.Dec. 500, 597 N.E.2d 208, cert. denied, 147 Ill.2d 636, 180 Ill.Dec. 157, 606 N.Ed.2d 1234 (1992) (criminal trespass conviction did not violate the defendants' free speech rights because the clinic, which leased a portion of a shopping center including the adjoining sidewalk and parking lot, had not opened its property as a public forum and had excluded all demonstrators regardless of their beliefs); and *City of Sunnyside v. Lopez* (1988), 50 Wash.App. 786, 751 P.2d 313 (criminal trespass conviction upheld because the complex of professional offices in which the defendant was arrested was not sufficiently open to the public to lose its character as private property).

We hold that neither the First Amendment nor Art. II, § 7 of the Montana Constitution entitles Krautter to have access to Planned Parenthood's property in order to exercise her right of free speech.

Affirmed.

TURNAGE, C.J., and GRAY, WEBER and HUNT, JJ., concur.



---

**Jonnie Musgrove DAVIS, Plaintiff, Appellant/Cross-Respondent,**

v.

**The CHURCH OF JESUS CHRIST OF LATTER DAY SAINTS; Corporation of the Presiding Bishop of the Church of Jesus Christ of Latter Day Saints; Corporation of the President of the Church of Jesus Christ of Latter Day**

Saints; Risk Management Division, Kalispell Stake Center of the Church of Jesus Christ of Latter Day Saints; and John Does I-X (unknown divisions, departments, subsidiaries, affiliates, associations, whether incorporated or unincorporated, agents, employees, bishops, presidents, assigns, or any other entity or person related to any of the above named Defendants), Defendants, Respondents/Cross Appellants.

No. 91-525.

Supreme Court of Montana.

Submitted Feb. 4, 1993.

Decided May 18, 1993.

Church member sued church for breach of fiduciary duty, fraud and negligent misrepresentation, and intentional infliction of emotional distress. The District Court, Eleventh Judicial District, Flathead County, Leif B. Erickson, J., dismissed all claims except that for breach of fiduciary duty, and both parties appealed. The Supreme Court, Weber, J., held that: (1) court properly dismissed claims; (2) fact issue precluded summary judgment on fiduciary duty claim; (3) evidence of religious sanctions imposed was inadmissible; (4) member could recover for pain and suffering; and (5) doctrine of charitable immunity does not exist in Montana.

Affirmed in part; reversed in part and remanded.

Trieweiler, J., concurred in part and dissented in part and filed opinion in which Hunt, J., joined.

Harrison, J., dissented and filed opinion.

**1. Fraud ⇐12**

Church did not commit fraud by promising member injured on church property that it would immediately pay her medical bills if she submitted to physical examination; promise to pay was promise to do something in the future, rather than misrepresentation of existing fact.

EXHIBIT B-18

closely reviewing the very piece of evidence at issue. It was a single comment in an otherwise unobjectionable argument by the government. The proof of Sanchez's guilt was quite strong and the comment being contested was, at best, peripheral to the credibility of one single source of incriminating evidence. We are satisfied that it could not unfairly have affected the jury's decision in any way given the other persuasive evidence against Sanchez.

### VI

[14] Sanchez finally challenges the instructions given to the jury regarding the presumption of innocence. He argues that by including in those instructions a statement that a defendant begins a criminal trial with a "clean slate," the court unfairly minimized the depth and importance of the presumption of innocence. We find no merit in that contention.

The instruction in whole, as largely derived from § 12.10 of Devit's *Federal Jury Practice and Instructions*, was:

> Now, as you know, this is a criminal case. There are three basic rules about a criminal case that you must keep in mind. First, the defendant is presumed innocent until proven guilty. The indictment against the defendant brought by the government is only an accusation, nothing more. It is not proof of guilt or anything else. The defendant, therefore, starts out with a clean slate.
>
> Second, the burden of proof is on the government until the very end of the case. The defendant has no burden to prove his innocence or to present any evidence or to testify....
>
> Third, the government must prove the defendant's guilt beyond a reasonable doubt. And I will give you further instructions on this point later. But bear in mind, in this respect, that a criminal case is different from a civil case.

*Id.* at 81.

We can find no error in these instructions. Sanchez points to no decision finding error in comparable "clean slate" references. Indeed, instructions incorporating such a reference have been expressly upheld by several other circuits. *See United States v. Littlefield,* 840 F.2d 143, 146 (1st Cir.1988); *United States v. Walker,* 861 F.2d 810, 813 nn. 7 & 8 (5th Cir.1988); *United States v. Hollister,* 746 F.2d 420, 424 (8th Cir.1984); *United States v. Cummings,* 468 F.2d 274, 280 (9th Cir.1972). We agree with those circuits that the reference in the context made could not constitute reversible error.

*AFFIRMED.*



Donna R. HOTALING; William W. Hotaling, Jr.; James P. Maher; Dorothy C. Sherwood, Plaintiffs-Appellants,

v.

CHURCH OF JESUS CHRIST OF LATTER-DAY SAINTS, Defendant-Appellee.

No. 96–1399.

United States Court of Appeals, Fourth Circuit.

Argued Jan. 29, 1997.

Decided June 30, 1997.

Holders of copyrights in genealogical research materials brought infringement action against church which had added materials to its library collection and made copies for its branch libraries. The United States District Court for the Eastern District of Virginia, Claude M. Hilton, J., granted summary judgment for church, and copyright holders appealed. The Court of Appeals, Butzner, Senior Circuit Judge, held that: (1) act of adding work to library's collection, listing work in library's index or catalog system, and making work available to borrowing or browsing public was "distribution" of work within meaning of Copyright Act; (2) fact issues as to whether copy of copyrighted work was being distributed by library to public within

# CHURCH OF JESUS CHRIST v. SUPERIOR COURT    Ariz. 431
### Cite as 714 P.2d 431 (Ariz.App. 1985)

148 Ariz. 261

The CHURCH OF JESUS CHRIST OF
LATTER DAY SAINTS, and the City
of Tucson, Petitioners,

v.

SUPERIOR COURT of the State of Ari-
zona, In and For the County of Pima
and Honorable Robert Buchanan, a
judge thereof, Respondents,

and

Susan CONNELLY, Real Party
in Interest.

Nos. 2 CA-SA 0261, 2 CA-SA 0262.

Court of Appeals of Arizona,
Division 2, Department B.

Aug. 29, 1985.

Rehearing Denied Oct. 16, 1985.

Review Denied Feb. 12, 1986.

---

Parent of 11-year-old child who was
killed after being struck by an automobile
when he rode from church parking lot into
city street without stopping brought action
against various defendants including city
and church. Both church and city brought
special actions following denial of their mo-
tions for summary judgment. The Court
of Appeals, Hathaway, P.J., held that: (1)
church parking lot did not constitute an
attractive nuisance, and (2) city did not
breach its duty to keep streets reasonably
safe.

Orders vacated; summary judgment
granted.

---

1. Negligence ⚖️33(1)

Possessor of land is not liable to tres-
passers for physical harm caused by failure
to exercise reasonable care to put land in a
condition reasonably safe for their recep-
tion.

2. Negligence ⚖️35

Owner of sloping parking lot was not
liable to trespassing 11-year-old boy struck
by automobile in city street after he had
ridden down driveway from parking lot into

street without stopping on theory that
parking lot constituted an attractive nui-
sance absent evidence showing that child
was unable to appreciate clear danger of
riding bicycle into street without yielding.

3. Municipal Corporations ⚖️763(1), 798

City has a duty to keep its streets
reasonably safe for travel which extends to
removing obstructions and hazards and re-
quiring warning of known dangerous condi-
tions on streets.

4. Automobiles ⚖️257

City did not breach its duty to keep
streets reasonably safe to protect 11-year-
old child from injury where he broke usual
"rules of the road" by failing to yield right-
of-way to an oncoming vehicle in riding his
bicycle from private parking lot into city
street without stopping.

---

Bury, Moeller & Humphrey by Marshall
Humphrey, III, Tucson, for petitioner
Church of Jesus Christ of Latter Day
Saints.

Kimble, Gothreau, Nelson & Cannon,
P.C. by Daryl A. Audilett, Tucson, for peti-
tioner City of Tucson.

Haralson, Kinerk & Morey, P.C. by Mi-
chael E. Larkin and Denneen L. Peterson,
Tucson, for real party in interest.

---

HATHAWAY, Presiding Judge.

These special actions have been taken
from the trial court's denial of motions for
summary judgment filed by the two peti-
tioners. Since the trial court's denials of
the petitioners' motions were interlocutory,
non-appealable orders, see A.R.S. § 12–
2101, and since these cases present no dis-
puted issues of material fact which necessi-
tate presention to a trier of fact, special
action jurisdiction is appropriate and we
grant relief.

The facts show that on July 27, 1983,
Chris Stewart, an eleven-year-old boy, was
struck by an automobile while riding his
bicycle on Chapel Avenue in Tucson. The
boy subsequently died of injuries sustained
in the accident. Prior to the accident, Chris

EXHIBIT B-20

## CHURCH OF JESUS CHRIST v. SUPERIOR COURT    Ariz. **759**
Cite as 764 P.2d 759 (Ariz.App. 1988)

on discovery of facts or opinions of experts, expected to testify at trial, acquired or developed in anticipation of litigation or for trial. The Committee Note anticipates in general that discovery from trial experts should be granted perfunctorily. Rule 26(b)(4), Committee Note at 217.

The order of the trial court is affirmed. Relief is denied.

BROOKS, P.J., and EUBANK, J., concur.



You have a complete copy of this case.

159 Ariz. 24

The CHURCH OF JESUS CHRIST OF LATTER-DAY SAINTS, a Utah corporation sole, Petitioner,

v.

SUPERIOR COURT of the State of Arizona, In and For the COUNTY OF MARICOPA, the Honorable Cheryl K. Hendrix, a Judge thereof, Respondent Judge,

Cynthia BROWN, as Guardian for Adriene Leigh Brown; Willa Ray; Kenneth Ray, Real Parties in Interest.

No. 1 CA–SA 267.

Court of Appeals of Arizona, Division 1, Department B.

July 21, 1988.

Review Denied Dec. 20, 1988.

Mother of victim of child abuse brought suit against alleged molester and against church, charging that church was negligent in counseling and treating alleged molester and in failing to report his conduct to law enforcement officials. Discovery was sought from three church officials, who claimed that information sought was privileged under clergyman/penitent privilege. The Superior Court, Maricopa County, Cause No. C–517976, Cheryl K.

Hendrix, J., compelled discovery in part. Church brought special action in Court of Appeals. The Court of Appeals, Fidel, J., held that: (1) special action was proper means to seek relief from order requiring disclosure of material claimed to be protected by privilege; (2) clergyman/penitent privilege could be impliedly waived; (3) alleged molester, by making disclosures to police department concerning his communications with church officials, waived any privilege that might otherwise have applied to his conversations with those officials or to conversations among officials; and (4) church officials had no statutory privilege independent of alleged molester's.

Review accepted, relief denied.

**1. Courts** ⇐207.1

Special action is proper means to seek relief when trial court orders disclosure that party or witness believes to be protected by privilege.

**2. Witnesses** ⇐217

Statutory clergyman/penitent privilege belongs to penitent, and clergyman may not disclose penitent's confidences without penitent's consent. A.R.S. § 12–2233.

**3. Witnesses** ⇐219(1)

Clergyman/penitent privilege is susceptible to implied waiver through conduct inconsistent with maintenance of conversational privacy. A.R.S. §§ 12–2231 et seq., 12–2231 to 12–2237.

**4. Witnesses** ⇐219(1)

Legislature by its silence on issue of implied waiver of clergyman/penitent privilege has left grounds for waiver of privilege entirely to commonlaw. A.R.S. §§ 12–2231 et seq., 12–2231 to 12–2237.

**5. Witnesses** ⇐219(1)

Where, during investigation into charges of abuse, alleged child molester revealed to police not only fact, but also substance of his communications with church officials regarding his sexual conduct, alleged abuser impliedly waived clergyman/penitent by inconsistent conduct for

EXHIBIT B-21

CHURCH OF JESUS CHRIST, ETC. v. INDUS. COM'N    Ariz. **581**
Cite as 724 P.2d 581 (Ariz.App. 1986)

ATTORNEY'S FEES

[5, 6]  Both parties, pursuant to A.R.S. § 12–341.01(A), have requested attorney's fees incurred on appeal and in the trial court.  Although attorney's fees were requested in both the complaint and the answer, they were not mentioned in the motion or cross-motion for summary judgment, and attorney's fees were neither awarded nor addressed in the judgment.

Arizona Revised Statutes § 12–341.01(A) provides for recovery of attorney's fees in an action "arising out of a contract, express or implied."  In *Ash, Inc. v. Mesa Unified School Dist.*, 138 Ariz. 190, 673 P.2d 934 (App.1983), we interpreted this provision, stating, "Thus, as used in A.R.S. § 12–341.01, the words, 'arising out of a contract' describe an action in which a contract was a factor causing the dispute." 138 Ariz. at 192.  Analogously, in *Sparks v. Republic Nat'l Life Ins. Co.*, 132 Ariz. 529, 647 P.2d 1127 (1982), our supreme court, in discussing attorney fee awards for claims sounding in tort, stated, "The fact that the two legal theories are intertwined does not preclude recovery of attorney's fees under A.R.S. § 13–341.01(A) as long as the cause of action in tort could not exist *but for* the breach of the contract." 132 Ariz. at 543, 647 P.2d 634.  Here, but for the two insurance contracts with Long's, there would be no dispute.  Further, recovery of attorney's fees under the statute may be granted even if the successful party plaintiff was not a party to the contract which formed the basis of the claim.  See *Nationwide Mut. Ins. Co. v. Granillo*, 117 Ariz. 389, 573 P.2d 80 (App. 1977) (to be awarded attorney fees under A.R.S. § 12–341.01, a successful party defendant need not have been a party to the contract).

CONCLUSION

For the above-stated reasons, the matter is reversed and remanded with instructions to the trial court to grant National's motion for summary judgment.  We also grant appellant's request for attorney's fees incurred before the trial court and on appeal.
724 P.2d—14

Appellants are directed to submit an affidavit in accordance with Rule 21(c), Arizona Rules of Civil Appellate Procedure, and *Schweiger v. China Doll Restaurant, Inc.*, 138 Ariz. 183, 673 P.2d 927 (App.1983).

KLEINSCHMIDT, P.J., concurs in the substantive result.



150 Ariz. 495
**CHURCH OF JESUS CHRIST OF LATTER DAY SAINTS,** Petitioner Employer,

Church of Jesus Christ of Latter Day Saints, c/o Risk Management Division, Petitioner Carrier,

v.

**The INDUSTRIAL COMMISSION OF ARIZONA, Respondent,**

Gilbert Estrada, Respondent Employee.

No. 1 CA-IC 3334.

Court of Appeals of Arizona, Division 1, Department D.

Feb. 20, 1986.

Insurer issued notice of claim status closing claim of injured employee with unscheduled permanent impairment.  After Industrial Commission employee notified insurer that medical report might not support finding of permanent impairment, second notice of claim status was issued which stated claimant had no permanent disability.  Employee protested the second notice.  Administrative law judge, William E. Smith, ICA Claim No. 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, entered award finding that first notice of claim status was res judicata as to employee's physical condition.  Insurer sought review.  The Court of Appeals, Jacobson, J., held that: (1) medical report raised inferences of

EXHIBIT B-22

ment of the amounted specified may be granted.

For example, the third exemption stated:

3. Evidence Of Final Adjudication of Nonliability—that is, evidence that you have been found not liable in a civil action at law arising out of the accident. (Accordingly, evidence of a police court's having found you not guilty of a traffic violation is not evidence); . . .

A review of the entire notice reveals a serious deficiency or incompleteness in imparting essential knowledge to the licensee; so that he might make an intelligent and informed decision as to whether to waive his constitutional right to a pre-suspension hearing. Specifically, the notice is not designed to inform the licensee that he is entitled to a pre-suspension hearing to determine whether there was a reasonable probability that he was at fault, and a judgment might be rendered against him as a result of the accident.

Due process is not a technical conception with a fixed content unrelated to time, place, and circumstances; it is flexible and requires such procedural protections as the particular situation demands. In an analysis of a procedure an important factor is the risk of an erroneous deprivation of a private interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards.[6]

The essence of due process is the requirement that 'a person in jeopardy of serious loss [be given] notice of the case against him and opportunity to meet it'. [Citation] All that is necessary is that the procedures be tailored, in light of the decision to be made, to 'the capacities and circumstances of those who are to be heard' [Citation] to insure that they are given a meaningful opportunity to present their case . . .[7]

6. Id. at pp. 334–335 of 424 U.S., 96 S.Ct. 893.

7. Id. at pp. 348–349 of 424 U.S., at p. 909 of 96 S.Ct.

To comport with the requirements of due process, the notice must be of such nature as reasonably to convey the required information.[8] In assessing the adequacy of a notice the central issue is whether the communication contains the type of information which is reasonably calculated to afford the informant an opportunity to be heard at a meaningful time and in a meaningful manner.[9]

In *Bell v. Burson*, a constitutional standard was established; the legislature implemented this standard in Sec. 41–12–2(c). The notice sent to plaintiff cannot be deemed to contain the type of information reasonably calculated to inform him of the type and nature of pre-suspension hearing to which he was entitled under the due process clause.

WILKINS, J., concurs in the views expressed in the dissenting opinion of MAUGHAN, J.



---

The CHURCH OF JESUS CHRIST OF LATTER–DAY SAINTS, Plaintiff,

v.

INDUSTRIAL COMMISSION of Utah, and Ivan L. Thurman, Defendants.

No. 15640.

Supreme Court of Utah.

Jan. 16, 1979.

Janitor filed claim for workmen's compensation benefits. The Industrial Commission awarded compensation to janitor for

8. *Mullane v. Central Hanover Bank and Trust Co.*, 339 U.S. 306, 314–315, 70 S.Ct. 652, 94 L.Ed. 865 (1950).

9. *Aguchak v. Montgomery Ward Co., Inc.*, Alaska, 520 P.2d 1352, 1356–1357 (1974).

EXHIBIT B -23

**Page 6**

Citation         Found Document        Rank 1 of 1        Database
343 S.E.2d 551                                                     NC-CS
**(Cite as: 81 N.C.App. 140, 343 S.E.2d 551)**

Elyse C. SCHMOYER, General Guardian and natural mother of Robert Wesley Harmon,
Jr., minor child of Robert Wesley Harmon, Sr., Deceased, Plaintiff-Employee,

v.

CHURCH OF JESUS CHRIST OF LATTER DAY SAINTS, Employer, Defendant-Employer,
United States Fidelity & Guaranty Insurance Company, Defendant-Insurance
Carrier.
No. 8510IC1390.
Court of Appeals of North Carolina.
June 3, 1986.

Mother of accident victim filed workers' compensation claim against his employer and their insurer. The Industrial Commission denied claim and mother appealed. The Court of Appeals, Wells, J., held that employee was not on "special errand" for employer at time of death.

Affirmed.

Schmoyer v. Church of Jesus Christ of Latter Day Saints
[1]
413   WORKERS' COMPENSATION
413XVI   Proceedings to Secure Compensation
413XVI(P)   Hearing or Trial
413XVI(P)3   Questions of Law and Fact
413k1718      Arising Out of and in the Course of Employment
413k1719 k. In general.
N.C.App.,1986.
Whether injury serving as basis for workers' compensation claim "arose out of" and "in the course of" worker's employment is mixed question of law and fact.

Schmoyer v. Church of Jesus Christ of Latter Day Saints
[2]
413   WORKERS' COMPENSATION
413VIII Injuries for Which Compensation May Be Had
413VIII(C) Injuries Arising Out of and in Course of Employment in General
413k605 k. Construction and application of statutory provisions in general.
N.C.App.,1986.
Requirements that injury "arise out of" worker's employment and occur "in the course of" employment are separate and distinct and must both be satisfied in order to render injury compensable under workers' compensation statute. G.S. § 97-1 et seq.

Schmoyer v. Church of Jesus Christ of Latter Day Saints
[3]
413   WORKERS' COMPENSATION
413VIII Injuries for Which Compensation May Be Had
413VIII(C) Injuries Arising Out of and in Course of Employment in General
413k607     Arising Out of Employment in General
413k610 k. What injuries arise out of employment in general.
N.C.App.,1986.
Term "arising out of" in workers' compensation statute refers to origin of injury or causal connection of injury to employment, and term "in the course of" refers to time, place, and circumstances under which injury occurred. G.S. § 97-1 et seq.
See publication Words and Phrases for other judicial constructions and definitions.

Copr. © West 1998 No Claim to Orig. U.S. Govt. Works

343 S.E.2d 551                                                                                           **Page 7**
**(Cite as: 81 N.C.App. 140, 343 S.E.2d 551)**

Schmoyer v. Church of Jesus Christ of Latter Day Saints
[3]
413   WORKERS' COMPENSATION
413VIII  Injuries for Which Compensation May Be Had
413VIII(C) Injuries Arising Out of and in Course of Employment in General
413k614     In Course of Employment in General
413k617 k. What are injuries in course of employment in general.
N.C.App.,1986.
Term "arising out of" in workers' compensation statute refers to origin of injury or causal connection of injury to
employment, and term "in the course of" refers to time, place, and circumstances under which injury occurred. G.S. §
97-1 et seq.
See publication Words and Phrases for other judicial constructions and definitions.

Schmoyer v. Church of Jesus Christ of Latter Day Saints
[4]
413   WORKERS' COMPENSATION
413VIII  Injuries for Which Compensation May Be Had
413VIII(D) Particular Causes, Circumstances, and Conditions of Injury
413VIII(D)17 Place of Injury with Reference to Plant or Premises of Employer
413k718 k. On errand by specific request or direction of employer or to transact specific business.
N.C.App.,1986.
"Special errand" exception to general rule that injuries to worker traveling to and from place of employment are not
compensable provides that injury during travel related to special duty for employer is "in the course of" employment.
See publication Words and Phrases for other judicial constructions and definitions.

Schmoyer v. Church of Jesus Christ of Latter Day Saints
[5]
413   WORKERS' COMPENSATION
413XVI  Proceedings to Secure Compensation
413XVI(N)  Weight and Sufficiency of Evidence
413XVI(N)7  Accident or Injury and Consequences Thereof
413k1487 k. Injuries arising out of and in course of employment in general.
N.C.App.,1986.                                                            *just refer to churches "employee".*
Evidence that worker had planned to spend the night before work at place of employment because of predicted snow
storm and was killed in accident at place on usual route to work did not establish that worker was on "special errand"
when he met his death and therefore entitled to compensation from employer.
See publication Words and Phrases for other judicial constructions and definitions.
 **\*\*552 \*141** Robert Wesley Harmon was killed in an automobile accident in Greensboro in the late evening of 5
February 1984. This claim for benefits under the Workers' Compensation Act was brought by plaintiff as the natural
guardian of Robert Wesley Harmon, Jr., the only child of Robert W. Harmon.

 On 5 February 1984, Robert Harmon was employed as a custodian at the Church of Jesus Christ of Latter Day Saints
located on Pinetop Road in Greensboro. Harmon worked for hourly wages, his usual hours of employment being from
8:00 a.m. until 4:00 p.m. One of Harmon's duties was to open the church in the morning. On the day he was killed,
Harmon worked at the church until about 5:00 p.m., then went to visit his fiancee, Ms. Cynthia Howle, at her residence
about three miles from the church. Harmon left Ms. Howle's residence at about 11:00 p.m., intending to spend the night
with his parents who lived in Pleasant Garden, a town located between Climax and Greensboro. After Harmon arrived
at his parents' home, he received a telephone call from Ms. Howle who told him that she was distraught and upset.
Harmon offered to return to her home and console her, saying that afterwards he would probably go to the church and
spend the night. While en route to Ms. Howle's residence, Harmon was involved in the accident which caused his death.
Other facts will be discussed as necessary in the body of our opinion.

 Following a hearing, Deputy Commissioner Rush denied plaintiff's claim for benefits. Upon appeal, the Full
Commission adopted and affirmed Commissioner

Copr. © West 1998 No Claim to Orig. U.S. Govt. Works

EXHIBIT B -25

**CHURCH OF JESUS CHRIST OF LATTER DAY SAINTS v. SCARBOROUGH.**

No. 4187.

United States Court of Appeals
Tenth Circuit.

May 10, 1951.

Rehearing Denied June 5, 1951.

Action by Spencer B. Scarborough, administrator of the estate of Eliza J. Holt, against the Church of Jesus Christ of Latter Day Saints to recover sum on deposit with church. The United States District Court for the District of Utah, Willis W. Ritter, J., entered judgment for plaintiff, and defendant appealed. The Court of Appeals, Pickett, Circuit Judge, held that agreement between parties was binding contract even though it included testamentary verbiage and words indicating a gift and even though passing of title to deposit was postponed until death.

Judgment reversed and cause remanded, with directions.

Gifts ⟜5(1)
Wills ⟜92

Where owner of $7,000 deposit with church made agreement whereby church was to pay interest on fund during life of owner with fund to become property of church upon death of owner, even though agreement contained testamentary verbiage and terms indicating a gift but was invalid as either testamentary disposition or gift, instrument was binding as contract.

———◆———

Leon Sarpy, New Orleans, La. (Ray, Quinney & Nebeker, and Albert R. Bowen, all of Salt Lake City, Utah, and Chaffe, McCall, Toler & Phillips, New Orleans, La., on the brief), for appellant.

James William Jones, Jr., Natchitoches, La., for appellee.

Before BRATTON, HUXMAN, and PICKETT, Circuit Judges.

PICKETT, Circuit Judge.

The plaintiff, as administrator of the estate of Eliza J. Holt, brought this action against the Church of Jesus Christ of Latter Day Saints, hereinafter referred to as the Church, to recover $7000 which was on deposit with the Church pursuant to the terms of an instrument executed by the parties on August 9, 1929. This appeal is from a judgment in favor of the plaintiff.

On about April 1, 1926, Charles E. Holt deposited with the Church in the State of Utah the sum of $7000. Holt died in 1929 and his widow, Eliza J. Holt, a resident of Louisiana, became the owner of the $7000 and made claim to the same. A representative of the Church went to Louisiana to discuss the matter with Mrs. Holt and her attorney, and the above mentioned instrument resulted. It provided that the funds should remain on deposit with the Church under the conditions set forth in that instrument, with the ownership remaining in Mrs. Holt. The amount was to bear interest at the rate of 5% per annum payable semi-annually on the 1st day of April and the 1st day of October of each year throughout the life of Mrs. Holt. The Church also agreed to pay 4% per annum from April 1, 1926, to October 1, 1929. It further provided: "It being especially understood and agreed herein, that any neglect or default in the payment of any maturing interest, as herein stated, then at the option of the said Mrs. Holt, this agreement to be abrogated and annulled, and the entire amount of principal of Seven Thousand Dollars to be returned to the said Mrs. Holt, immediately and all accrued interest." The instrument concluded with this language: "And it is agreed that on payment of the interest as herein stipulated, the said principal shall become the property of the said Church of Jesus Christ of Latter Day Saints and under onerous donation, at the time of the death of the donor, Mrs. Eliza J. Holt." There were phrases in the instrument appearing to be of a testamentary character or which indicated that a gift may have been intended.

The parties agree that the provisions of the instrument do not amount to a testamentary disposition or a gift under the laws of Louisiana. We have then to consider only the question of whether the instrument was a binding contract between the parties whereby the deposit became the property of the Church upon the death of